IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| IN THE MATTER OF: | ) | CASE NO. BK10-43797-TJM |
| | ) | |
| WHITE FARMS TRUCKING, INC., | ) | CH. 11 |
| | ) | |
| Debtor(s). | ) | |

## ORDER

Hearing was held in Lincoln, Nebraska, on April 13, 2011, regarding Filing #104, Motion for Order to Show Cause, filed by the debtor, and Filing #119, Objection, filed by Integrated Freight Corporation and Triple C Transport, Inc. Patrick Turner and Robert V. Ginn appeared for the Debtors, Thomas Ashby appeared for People's United Equipment Finance Corp., Shawn Carver appeared for PPL Group, Angela Boyer and Richard Berkshire appeared for Integrated Freight Corporation and Triple C Transport, Inc., David J. Skalka appeared for Navistar Financial Corporation, Mike Mullen appeared for Craig and Bonnie White, Mike Schleich appeared for Mericap Funding, and Richard Garden appeared for SCC Equipment Finance.

The debtors, White Farms Trucking, Inc., and Craig Carrier Corp., LLC, own numerous trucking units, including tractors and trailers, and, at one time, operated trucking businesses. The trucking units have been financed and all, or almost all, are subject to perfected security interests held by financing entities such as People's United Equipment Finance Corp., and Navistar Financial Corporation.

The businesses were sold to Integrated Freight Corporation and its subsidiary, Triple C Transport, Inc. The debtors then leased the trucking units to Triple C Transport, Inc., and its parent company.

Disputes arose between the debtors and Triple C Transport, and lease payments ceased. Because of the failure to receive lease payments, the obligations to those entities holding security interests in the trucking units went unpaid, causing pressure to be brought to bear on the debtors and on their owners, Mr. and Mrs. White.

The debtors filed bankruptcy in December of 2010, under Chapter 11. They moved to reject the leases with Triple C and the motion to reject was granted. They demanded turnover of the trucking units following the rejection of the lease, but Triple C refused.

The debtors then moved for an order requiring turnover of the trucking units. An order was entered giving a date certain for the turnover. Shortly after its entry, Triple C filed a motion requesting an extension of time to turn over the equipment because it was located all across the country and would be extremely expensive to gather and bring to the Nebraska headquarters of the debtors within the short period allowed by the court order.

On March 9, 2011, after a hearing at which the president of Triple C testified concerning his practical inability to get the vehicles delivered within the original time frame, an order was entered extending the time frame to April 5, 2011. That date was chose because Mr. Hoffman, the president of Triple C, testified under oath that his company would do everything possible to get the trucking units delivered, but they would need approximately 30 days to do so.

That order also included the following provisions: Integrated Freight Corporation and Triple C Transport, Inc., shall eventually be required to pay for the continuing use of the equipment; IFC and Triple C must provide proof that the debtor and financiers are additional insureds or loss payees on the insurance policies; IFC and Triple C shall deal directly with debtors through counsel on all issues, except if a financier has relief from stay, the companies may deal directly with its attorney; finally, Mr. White, who had been accused of interfering with the operation of Triple C by contacting its drivers and customers, was ordered to refrain from such action.

On April 6, 2011, the debtors filed this motion requesting an order for Triple C to show cause why it should not be held in contempt for failing to comply with the terms of the order. On the date of the motion, Triple C had returned only eight pieces of equipment since the March 9, 2011, order. In addition to the eight pieces of equipment delivered to the debtor, six pieces of equipment were delivered to various creditors, leaving 123 pieces of equipment in the wrongful possession of Triple C.

From and after May 9, 2011, through and including April 13, 2011, the date of the hearing on this motion, Triple C has continued to utilize and operate a significant number of tractor-trailer combinations. It has paid no rent since December and has paid no adequate protection payments for the use of the equipment, although it has been requested by the debtors to do so.

Triple C has failed to list the secured lenders on the insurance policies as additional insureds. Triple C has failed to endorse and deliver either to the debtors or the secured lenders insurance proceeds checks naming Triple C, the debtors and secured creditors as payees. Triple C has refused to cooperate in completing and signing supplemental proof of loss forms required by the insurance adjuster, although it has been requested to do so on numerous occasions.

When asked at the hearing why Triple C had failed to deliver the trucking units by April 5, 2011, the court was presented with the proposition that Mr. White had interfered so much with the attempted delivery that he should be blamed for the failure of Triple C to comply. In addition, the court was presented with the argument that Triple C had been unable to obtain financing to purchase replacement trucking units and if it delivered all of the units that it was now operating, it would go out of business. The evidence of Mr. White's interference after the March 9, 2011 order is not credible.

Triple C made no attempt to get an additional extension from the court. It made no offer of financial compensation to either the debtors or to the secured parties for continuing use. It simply ignored its obligation under the court order of March 9, 2011. If it is in fact true that delivery of the operating trucking units will cause Triple C to go out of business, that is unfortunate, but is not the problem of the debtors, the secured creditors, or this court. There is nothing in the Bankruptcy Code, or contract law for that matter, that requires these debtors and these secured creditors to finance the operation of Triple C's business. But that is exactly what Triple C has caused to happen. Triple C is in obvious intentional contempt of this court's order.

IT IS ORDERED that Triple C shall:

1. Endorse any and all insurance checks and deliver them to counsel for the debtors or counsel for the named secured creditor. The endorsed checks must be delivered by April 21, 2011.

2. Provide the insurance adjuster with the signed and completed proof of loss for any and

all claims. The date for completion and delivery is no later than April 21, 2011.

      3. Provide counsel for Navistar and People's and the debtors a detail sheet with exact location of units whether "abandoned," parked, unplated, or in use. That list is due no later than April 21, 2011. Triple C has had notice of that request since before March 9, 2011, and has simply ignored its obligation.

      4. Deliver all trucking units to the Doniphan, Nebraska, location of the debtors, or to any location directed by counsel for the secured creditors that have already received relief from the automatic stay. The delivery date is no later than April 21, 2011.

      5. Stop loading the operating vehicles as of the date of this order and deliver the vehicles by April 21, 2011.

      IT IS FURTHER ORDERED that monetary sanctions will eventually be imposed for the intentional failure to comply with the March 9, 2011, order by April 5, 2011. But, in addition to those potential sanctions, and to encourage Triple C to comply with this order, monetary sanctions will be imposed for each day following April 21, 2011, that all of the units are not delivered. Each day after April 21, until April 28, 2011, if all of the units have not been delivered, a monetary sanction of $2,000 per day will be imposed. Each day from April 29, 2011, through May 5, 2011, the daily sanction shall increase to $4,000 per day. During the following week, the sanctions shall increase to $6,000 per day, and so on. Finally, even though there is a separate motion dealing with this matter, as an additional sanction for failure to comply with the March 9, 2011, order and this order, Mr. White is released from the restraint put on him in the March 9, 2011, order. He is free to contact drivers and request that they deliver the trucking units to Doniphan, Nebraska, or elsewhere. Neither Triple C, its parent company, nor any of its officers or employees may order the drivers to refuse to deliver the units as directed by Mr. White. Triple C has no ownership interest, security interest, or lease interest in any of the units. It has a possessory interest only because it intentionally refuses to obey the lawful order of this court to turn the units over to the appropriate entities. It has no legal authority to control the trucking units except as directed in this order.

      DATED:     April 15, 2011

BY THE COURT:

/s/ Timothy J. Mahoney
United States Bankruptcy Judge

Notice given by the Court to:
  *Patrick Turner         Richard Berkshire        Angela Boyer
  *Robert Ginn            David J. Skalka          Mike Schleich
  Thomas Ashby          Richard Garden
  Shawn Carver           Mike Mullen

Movant (*) is responsible for giving notice to other parties if required by rule or statute.