IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| IN THE MATTER OF: ) | CASE NO. BK10-43797-TJM |
| ) | |
| WHITE FARMS TRUCKING, INC., ) | CH. 11 |
| ) | |
| Debtor(s). ) | |
| IN THE MATTER OF: ) | CASE NO. BK10-43798-TJM |
| ) | |
| CRAIG CARRIER CORP., LLC, ) | CH. 11 |
| ) | |
| Debtor(s) ) | |

## ORDER

Hearing was held in Lincoln, Nebraska on May 2, 2011, regarding Filing # 146, Motion to Reconsider Order of Show Cause, filed by Triple C Transport, Inc., and Integrated Freight Corporation ("IFC"). Robert Ginn appeared for the debtors; Thomas Ashby appeared for People's United Equipment Finance Corp.; Richard Berkshire appeared for IFC and Triple C Transport, Inc.; and Richard Garden, Jr., appeared for FCC Equipment Finance.

White Farms Trucking, Inc., and Craig Carrier Corp., LLC, are two entities owned by Craig and Vonnie White that filed Chapter 11 cases on December 21, 2010. The entities are the owners, subject to security interests held by financing firms, of numerous tractor-trailer units. Those units, on the petition date, were leased to Triple C Transport, Inc. The leases were guaranteed by IFC, the parent of Triple C Transport, Inc.

On February 16, 2011, the debtors filed, in each case, an emergency motion for turnover of property, to shorten time to resist and to expedite the hearing. On the same date, the two entities filed emergency motions to reject leases or executory contracts, to shorten time to resist and to expedite the hearing. Those motions are found at Filings #47 and #48 in the White Farms Trucking case. Almost all filings are duplicates in both cases and therefore, for purposes of this order, only the filings in the White Farms Trucking case will be identified.

The motions dealt with the tractor-trailer units being operated by Triple C Transport under the lease agreements. Because no rent payments had been made for at least a couple of months prior to filing the motions, the motions requested turnover of the tractor-trailer units and to reject the leases regarding such tractor-trailer units.

The hearing was scheduled for February 24, 2011, with objections due by February 22, 2011. Notice of the hearing and the shortened bar date were served upon Triple C Transport at its office in Grand Island, Nebraska, and on IFC at its office in Sarasota, Florida.

No objections were filed by Triple C Transport or IFC. Affidavit evidence of Craig White was filed in support of the motions, Filing #68. Orders granting the motions were filed on February 24, 2011, at Filings #70 and #71. Because the order regarding turnover required immediate turnover, IFC and Triple C Transport filed an emergency motion to extend the time for turnover at Filing #78. The hearing on that emergency motion was held on March 9, 2011. After receiving both affidavit evidence and live testimony from a representative of IFC and Triple

C, the court granted an extension of time to April 5, 2011, for the turnover of the equipment. IFC and Triple C were also ordered to provide proof of insurance and proof that the debtors and the financiers are additional insureds or loss payees.

On April 6, 2011, at Filing #104, the debtors filed a motion to show cause why IFC and Triple C should not be held in contempt for their failure to turnover the equipment by April 5, 2011. That motion was resisted at Filings #118 and #119.

On April 12, 2011, prior to a hearing on the motion to show cause, the debtors filed an adversary proceeding against Triple C Transport and IFC, A11-4035. In that adversary proceeding they pray for a judgment for monetary damages, including past due and future rents, and request turnover of the personal property owned by the debtors, including the tractor-trailer units that had not been turned over by that date.

Hearing was held on the motion on April 13, 2011. On April 15, 2011, at Filing #139, an order was entered finding Triple C in contempt and ordering it to take certain actions by April 21, 2011. That order erroneously left IFC out of the contempt citation, although the motions were directed at both companies. The order directed Triple C to deliver all of the undelivered units by April 21, 2011, discussed potential monetary sanctions, and other matters.

On April 20, 2011, at Filing #146, IFC and Triple C filed a motion to reconsider. In that motion they pointed out that the order erroneously suggested that they had failed to provide proof of insurance coverage, including additional insureds and loss payees. They suggested that the court had made an erroneous factual finding with regard to how many units had been turned over by April 5. They asserted that most of the remaining units that had not been delivered had been off the roads in unusable condition or unlicensed since before the initial order of turnover was entered.

A hearing was scheduled on the motion to reconsider for May 2, 2011.

On April 22, 2011, at Filing #154, the debtors filed a status report concerning compliance with the contempt order. The status report informs that Triple C had delivered and endorsed all existing insurance checks to the debtors' counsel as required by the contempt order. Further, Triple C had provided the insurance adjustor with signed and completed proof of loss for any and all claims as required by the contempt order. Triple C had provided a detail sheet with exact location of units "abandoned, parked, unplated or in use." Although there were some discrepancies in the list, the status report asserts that the debtors believe, based upon available information, that Triple C has substantially, but not fully, complied with this aspect of the contempt order.

The status report further lists numerous units that as of that time had not been delivered and the status report claims that Triple C, at that date, was still operating some of the units for its own business purposes.

At the hearing on May 2, 2011, the affidavit of John Goda, Filing #170, was admitted. Mr. Goda is the insurance agent and he attached copies of certificates issued on or about March 10, 2011, which did show appropriate insurance coverage, named the debtors as additional insureds and named the financial institutions as loss payees. The court's factual findings concerning that issue were incorrect in the April 15 order.

The affidavit of Henry Hoffman, president of Triple C, Filing #173, adequately explains

why Triple C was unable to completely comply with the order of turnover by April 5, 2011. He explained, as he had at the original hearing, that numerous vehicles were unplated and could not be driven in the state of Nebraska. He also explained that such was the situation prior to the turnover order. He informed the court that all of the operating vehicles had been taken out of service and delivered to the debtor prior to the hearing or were in the process of being delivered to the debtor at the time of the hearing. Triple C was not operating, had no drivers and no trucks and no resources to pick up and deliver the remaining units.

The chief executive officer of IFC, Paul Henley, testified by affidavit at Filing #172 that IFC and Triple C had acted in good faith with regard to the bankruptcy. IFC had advanced $50,000 to the debtor for attorney fees to enable the debtor to file the Chapter 11 cases. The idea of the Chapter 11 cases was to have been to stop any replevin actions of the trucks and to reorganize the financial situation so the debtors and Triple C could remain in business with payments flowing through the debtors to the financing entities.

Based upon the evidence received at the hearing on May 3, 2011, I find that certain factual findings in the order of April 15, 2011, were erroneous. Triple C did have in place appropriate insurance as of that date. Triple C did not intentionally fail or refuse to deliver all of the vehicles on a timely basis. Some of the vehicles are unplated and are unable to be delivered into the state of Nebraska in their present condition. Consistent with the intent of the order, Triple C has delivered all of the operating units.

Finally, there is an additional basis to reconsider the order with regard to monetary sanctions. The debtors, prior to the April 13, 2011, hearing which resulted in the April 15, 2011, sanctions order, filed an adversary proceeding covering not only monetary damage requests but physical turnover requests. The failure of the physical turnover would be directly related to the monetary damages requested.

I find that Triple C did substantially and significantly comply with the order of April 15, 2011. Triple C did not intentionally violate the April 15 order of the court. That portion of the order of April 15, 2011, regarding monetary sanctions is vacated.

The debtors have an adequate remedy at law as shown by the allegations in the adversary proceeding filed on April 12. The financing entities have relief from the automatic stay or can easily obtain relief from the automatic stay to proceed to take possession of the remaining vehicles that have not been delivered.

IT IS ORDERED: The motion to reconsider (Fil. No. 146) is granted.  Triple C Transport did substantially and significantly comply with the order of April 15, 2011, Filing #139, and that portion of the order regarding monetary sanctions is vacated. Triple C has purged the contempt.

DATED:      May 20, 2011

BY THE COURT:

/s/ Timothy J. Mahoney
United States Bankruptcy Judge

Notice given by the Court to:
Robert Ginn

Thomas Ashby
*Richard Berkshire
Richard Garden, Jr.
United States Trustee

*Movant is responsible for giving notice of this order to other parties if required by rule or statute.